UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **CHRISTOPHER HALL,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 6:22-CV-00557-RDP |
| **KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY,** | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Plaintiff Christopher Hall brings this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI"). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed. *See* 42 U.S.C. § 1383(c).

### I.  Proceedings Below

Plaintiff filed his application for SSI on April 29, 2019, alleging that his disability began on January 1, 2016. (R. 38, 113, 256). Plaintiff's application was initially denied by the Social Security Administration on July 25, 2019. (R. 113). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on September 8, 2019. (R. 119). Plaintiff received a hearing before Administrative Law Judge Jerome L. Munford on August 9, 2021. (R. 119, 205, 208). Present at the hearing were the ALJ, Plaintiff, Plaintiff's counsel, and Vocational Expert Jessica Coles ("VE"). (R. 42–100).

In his decision dated September 24, 2021, the ALJ determined that Plaintiff was not disabled under the Act. (R. 38). Plaintiff requested a review of the ALJ's decision with the Appeals Council on September 24, 2021. (R. 1). The Appeals Council subsequently denied Plaintiff's request, thereby making the decision of the ALJ the final decision of the Commissioner, and a proper subject of this court's appellate review. (R. 1). *See* 42 U.S.C. § 1383(c).

Plaintiff was 50 years old at the time of the hearing. (R. 51). Plaintiff alleges that he has been disabled since January 1, 2016. (R. 113, 256). Plaintiff claims that his disability is caused by the following conditions: shortness of breath and dizziness when walking, diabetes, regular migraines, as well as limited vision and blindness. (R. 53–56). Plaintiff further alleges that he suffers from an unspecified neurocognitive disorder, but clarified that he does not believe that he has a mental disability. (*See* R. 61, 89–92).

Plaintiff has not been gainfully employed or worked any job since June 1991, when he spent a month stacking and bending wood at a lumber yard. (R. 51, 60). Plaintiff maintains that he had to quit that job due to migraines that kept him from performing his duties. (R. 60–61).

Plaintiff routinely visited Capstone Rural Health Centers between 2018 and 2020 for general medical examinations and prescription refills. (R. 343–400). The records from these routine visits indicate that Plaintiff suffered from severe diabetes, obesity, bronchitis, and a vitamin D deficiency. (R. 343, 366–400). Plaintiff's regular healthcare providers prescribed medication to control his symptoms, which was effective. (R. 364, 373–76, 380–82). While Plaintiff contends that he suffered from debilitating migraines, the medical records include very little information concerning the severity of those episodes or any assessment plan for them. (R. 60–61).

The ALJ's decision cited to the factual and medical evidence and the testimony during the hearing by Plaintiff, Donna Jacobs,[1] Elizabeth Bonner,[2] and the VE. The ALJ also considered the opinion of Dr. Justin Anderson, Psy.D., a clinical psychologist who previously examined Plaintiff.

Following Plaintiff's testimony, Donna Jacobs testified. She began visiting Plaintiff in 2019 (R. 70) and visited him once a month to help him with his home chores, finances, and other routine tasks. (R. 70). Jacobs expressed her belief that Plaintiff is unable to perform any competitive employment. (R. 71). She explained that, based on her experiences with Plaintiff, he has trouble moving around, difficulty with social functioning, and suffers from an inability to take care of himself. (R. 72, 75). However, Jacobs also conceded that she had not personally witnessed Plaintiff interact with other individuals in any inappropriate manner in a public setting. (R. 80).

Following Jacobs' testimony, the ALJ heard testimony from Elizabeth Bonner. (R. 83–93). Bonner helped Plaintiff pay his bills, drove him to doctor appointments, and took him grocery shopping. (R. 84). However, Bonner stopped assisting Plaintiff in May 2021, approximately four months prior to the ALJ hearing. (R. 84, 91). Bonner opined that Plaintiff is unable to care for himself. (R. 85). She testified that Plaintiff does not have the ability to shop for things on his own, does not understand simple nutrition, often forgets to take his medication, and sometimes cannot find his own apartment at times. (R. 84–87). Bonner also believes that her own minor children (ages 14, 11, and 7) have a better understanding of personal hygiene, self-care, and financial management than Plaintiff. (R. 89–91). While Bonner believes Plaintiff is unable to go in public or shop for himself, she has not personally taken him to any store. (R. 92). Her belief that Plaintiff is unable to shop and care for himself comes from her experience of taking him to church, where

---

[1] Donna Jacobs is a case manager for the Alabama Rural Coalition for the Homeless.

[2] Elizabeth Bonner is a member of Plaintiff's church who voluntarily provided him assistance.

3

she claims that "he's out of breath by the time he gets to the door of the church building," leading her to believe that Plaintiff is incapable of walking around a store to shop for himself. (R. 93). And, while Bonner believes Plaintiff has the social capability of a teenager, she also has never noticed Plaintiff act inappropriately in a social setting (R. 86, 93).

There was also testimony during the hearing from the VE, Jessica Coles. The VE testified that she did not discover any relevant work history for Plaintiff. (R. 94). Based on the ALJ's description of the individual seeking employment and the specific requirements and limitations for the position, the VE testified that a person with the restrictions given in the hypothetical could work in the following "medium" work positions: a laundry laborer, a packager, or a buffer, and each of those categories have over 50,000 jobs in the national economy. (R. 95–96). The VE also testified that a person with the given restrictions and limitations could work in the following "light" work positions: a garment sorter, a sorter of agricultural product, and inspector and hand packager, and each of those categories have over 50,000 jobs in the national economy. (R. 96). The VE further testified that even when more restrictions and limitations are placed on the original hypothetical, such as an inability to climb stairs, there is no change in the work that the hypothetical claimant could perform. (R. 96).

One piece of non-testimonial medical evidence considered by the ALJ was the opinion of Dr. Justin Anderson, Psy.D. Plaintiff received a psychological evaluation from Dr. Anderson in 2016. (R. 334). After administering the Wechsler Adult Intelligence Scale-IV (WAIS-IV) test, Dr. Anderson concluded that Plaintiff "obtained a Full Scale IQ of 87," which "places him in the low average range of intellectual function." (R. 338). Based on the tests administered, Dr. Anderson gave Plaintiff a diagnosis of unspecified neurocognitive disorder and unspecified intellectual disability. (R. 340). Dr. Anderson's opinion from this evaluation was that "[Plaintiff] appear[ed]

to be able to perform some work-related mental activities." (R. 334). These activities included (1) the ability to "[u]nderstand and remember simple and detailed instructions for verbal information" and understand and remember simple visual instruction, (2) "[s]ustain attention for extended period of two hour segments for simple and detailed tasks," (3) "[h]ave occasional contact with coworkers and supervisors with occasional contact with the public," and (4) "[a]dapt to static work environment with infrequent changes and with simple, routine, and repetitive tasks, no fast pace production, and no stringent quotas." (R. 334–35).

## II.     ALJ Decision

Disability under the Act is determined using a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. *Id*. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." *Id*. § 1572. "Substantial" work activity is work that involves doing significant physical or mental activities. *Id*. § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. *Id*. § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of these criteria, then the claimant is not disabled. *Id*. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. *Id*. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See id*. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. *Id*. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must

first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments *Id*. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. *Id*. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience *Id*. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. *Id*. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff had not "engaged in substantial gainful activity since he filed his application for SSI on April 26, 2019, the application date." (R. 25). The ALJ also concluded that Plaintiff suffers from severe high blood pressure, diabetes, obesity, moderate intellectual disability, and an unspecified neurocognitive disorder. (R. 25). However, the ALJ determined that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity required to qualify for SSI benefits. (R. 27). After determining that Plaintiff has the RFC to perform what 20 C.F.R. 416.967(c) defines as "medium work," the ALJ found that there are jobs in the national economy that Plaintiff could perform based on his age, education, and work experience. (R. 30–31). While Plaintiff has the RFC to perform "medium work," the ALJ did note that Plaintiff's ability to perform that work is qualified. (R. 30–31). The ALJ explained that Plaintiff should:

> primarily have verbal job instructions; no driving; no operation of hazardous machinery; and no work at unprotected heights. He is able to occasionally stoop,

6

> crouch, crawl, and kneel, but do no climbing of ladders, stairs, ropes, or scaffolds. He should have minimal work-related changes and perform no work requiring concentrated exposure to pulmonary irritants or requiring him to meet production goals or quotas. He is able to understand, remember, and carry out simple, routine tasks involving 1 or 2 step instructions. He should have occasional contact with coworkers or supervisors but no contact with the general public.

Lastly, as the ALJ determined that Plaintiff had no past relevant work, the transferability of his skills is not a factor. (R. 37).

### III. Plaintiff's Argument for Remand or Reversal

Plaintiff argues for reversal on two grounds. First, Plaintiff contends that the ALJ improperly weighed the record and testimonial evidence in coming to his conclusions. (Pl. Br. at 20–21). It is Plaintiff's position that the ALJ's decision to give more weight to Dr. Anderson's psychiatric opinion than the nonmedical opinion of Jacobs and Bonner was improper because Dr. Anderson's opinion was written three years prior to Plaintiff's application for SSI. (Pl. Br. at 19–20). Plaintiff contends that "[t]he testimony . . . was competent to prove that [Plaintiff's] neurocognitive disorder severely affects his daily activities and ability to work," and should have been considered persuasive. (Pl. Br. at 15, 19–20).

Second, Plaintiff asserts that the "ALJ committed error by failing to fully and fairly develop the record." (Pl. Br. 20). Plaintiff claims that the evidence was not sufficient because the ALJ did not fully inquire or develop the record as to his '"unspecified neurocognitive disorder' and possible agoraphobia" by not ordering "a current consultative examination with a psychiatrist." (Pl. Br. at 20).

### IV. Standard of Review

The only issues before this court are (1) whether the record reveals substantial evidence to sustain the ALJ's decision; and (2) whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Lamb v. Bowen*, 847 F.2d 698,

701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.     Discussion**

After review, the court concludes that the ALJ's findings are supported by substantial evidence and that the ALJ did not err in applying legal standards.

    **A.     The ALJ Did Not Err in Weighing the Evidence**

The only question presented here is whether the record contains substantial evidence that supports the ALJ's decision. *See* 42 U.S.C. § 405(g); *Walden*, 672 F.2d at 838. If substantial evidence exists, the Commissioner's factual findings are conclusive. 42 U.S.C. § 405(g). Here, the record contains substantial evidence which supports the ALJ's conclusion and findings.

Plaintiff argues that the ALJ improperly weighed the evidence and gave too little weight to the subjective, nonmedical evidence and testimony of Donna Jacobs and Elizabeth Bonner. While the ALJ is required to consider all of the evidence, both objective and subjective, the ALJ is responsible for assessing the claimant's symptoms, and is "not required to articulate how [he] considered evidence from nonmedical sources." *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005); 20 C.F.R. § 416.920c(d).

After reviewing both the medical evidence and the nonmedical testimony, the ALJ concluded that Jacobs and Bonner's testimony conflicted with the objective medical evidence as to Plaintiff's ability to perform work. Similar to what occurred in *Moore*, upon his own assessment of Plaintiff's symptoms and testimony, the ALJ "relied on the inconsistencies between [Plaintiff's] descriptions . . . and [his] claims of infirmity." 405 F.3d at 1212.

        **1.**    **Objective Medical Evidence and Plaintiff's Testimony**

The objective medical evidence in the record shows that Plaintiff regularly visited Capstone Rural Health Centers for general medical examinations and prescription refills. (R. 343–400). The records from these visits indicates that Plaintiff suffers from severe diabetes, obesity, bronchitis, and a vitamin D deficiency. (R. 343; 366–400). However, despite these complications, his symptoms were well controlled through medication. He had normal motor function, normal gait, and normal cardiovascular function. (R. 364, 373–76, 380–82). Plaintiff's regular medical provider noted that his musculoskeletal, neurological, and respiratory systems were normal. (R. 375, 386). The medical records also noted that Plaintiff's symptoms, including his obesity, blood pressure, and vitamin D deficiency, showed signs of improvement and that, other than his obesity, he appeared well and healthy. (R. 347, 349–50, 354, 362, 375, 382, 386,388, 390).

The medical evidence also included a psychological exam performed by Dr. Anderson. (R. 334). While Dr. Anderson concluded that Plaintiff could be expected to have "marked limitations in his ability to understand and remember detailed instructions," Dr. Anderson did not believe that Plaintiff's psychological limitations precluded him from being able to interact socially or perform in a work setting. (*See* R. 334–42).

According to the Plaintiff's own testimony, he is able to, and regularly does, take care of himself. (*See* R. 54–62). Plaintiff also testified that he is able to cook, clean, read, watch television, regularly take his medications, and perform other routine daily tasks. (R. 54, 56–57, 60, 62). Additionally, Plaintiff stated that he does not believe that he has a mental disability, but instead believes that he may be depressed. (R. 61).

### 2. Jacobs and Bonner's Testimony

Jacobs and Bonner's testimony was in conflict with the evidence in the medical record and provided by Plaintiff himself. Jacobs and Bonner both believe, based on their experiences working with Plaintiff, that Plaintiff is "incapable of taking care of himself" and that he has the capability of "a teenager." (R. 72, 75, 85). Jacobs and Bonner also testified that Plaintiff would suffer from shortness of breath when walking or performing daily tasks. (R. 93). But, expert testimony from the VE provided that there are multiple jobs in the national economy that Plaintiff would be able to perform given his limitations, even if his symptoms are as severe as Jacobs and Bonner believed them to be. (R. 94–98).

The ALJ's decision that Plaintiff's symptoms were not as limiting as Jacobs and Bonner believed, and that Plaintiff would be able to perform certain jobs as explained in expert testimony, is supported by medical evidence that Plaintiff's motor function, gait, cardiovascular, musculoskeletal, neurological, and respiratory systems were normal. (R. 364, 373–76, 380–82).

Accordingly, the ALJ's findings are supported by substantial evidence in the record, and thus are due to be affirmed.

### B. The ALJ Did Not Fail to Fully and Fairly Develop the Record as to Plaintiff's Unspecified Neurocognitive Disorder and Possible Agoraphobia

Although an ALJ has a general obligation to develop the record, the claimant bears the burden of proof to establish that he is "disabled." 20 C.F.R. § 416.912(a)(1). Therefore, it is the claimant who "is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam). Ultimately, the claimant must submit evidence that is "complete and detailed enough" for the ALJ to make a determination as to his disability. 20 C.F.R. § 416.912(a)(1).

As part of the general duty to develop the record, the ALJ and the Commission must make "every reasonable effort" to develop the claimant's "complete medical history for at least the 12 months preceding the month in which [claimant] filed [his] application." 20 C.F.R. § 416.912(b)(1). Where the medical source or entity that maintains claimant's medical evidence cannot or will not provide "sufficient medical evidence about [claimant's] impairment," the ALJ has the discretion to request an additional consultative examination. 20 C.F.R. § 416.917; *see* 20 C.F.R. § 416.912(b)(2). However, an ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for [him] to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

The record in this case contains sufficient medical records and evidence to support the ALJ's decision not to order a consultative examination. Upon request by the Commission, Plaintiff (or the medical sources that maintained his medical evidence) provided ample medical records to the Commission as evidence in support of his application. (R. 343–400). Along with evidence of

Plaintiff's routine visits to his medical provider, the medical records included a psychological evaluation conducted by Dr. Anderson in 2016. (R. 333–42).

Dr. Anderson diagnosed Plaintiff with "Unspecified Neurocognitive Disorder" and "Unspecified Intellectual Disability." (R. 334). In Dr. Anderson's opinion, Plaintiff

> can be expected to have marked limitation in his ability to understand and remember detailed instructions . . . no limitation in his ability to sustain concentration, persistence, and pace for tasks, moderate limitation in his ability to interact socially, and marked limitation in his ability to adapt to the routine stressors/changes of a general work environment primarily due to slowed processing.

(R. 335). Dr. Anderson concluded that Plaintiff suffered from an unspecified neurocognitive disorder and an unspecified intellectual disability. But, this evidence does not indicate that Plaintiff was unable to take care of himself due to these conditions, nor that these unspecified disabilities have affected Plaintiff in such a way that the ALJ needed to order an additional consultative examination. From the record, including Plaintiff's own testimony, Plaintiff obtained a high school diploma, is able to care for himself, and does not have any problems being around people (R. 52, 59). Furthermore, Plaintiff testified that he did not believe that he had any kind of mental condition. (R. 61). Also, Dr. Anderson noted that Plaintiff "reported that he spends his day cleaning, cooking, watching t.v., and playing video games" and that "he is able to care for his own personal hygiene, prepare simple meals, clean, and shop for his own needs." (R. 340). Both the non-medical evidence provided by Plaintiff's testimony and the objective medical evidence support the ALJ's conclusion that Plaintiff's unspecified disability and disorder do not significantly limit Plaintiff's ability to perform basic work activities.

Because the ALJ was supplied with sufficient medical evidence by Plaintiff and his medical sources, the ALJ's use of discretion to not request an additional consultative exam does not constitute reversable error.

**VI.     Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this April 12, 2023.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE